1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ernie Pete Ortega, | CIV 11-359-PHX-JWS (MHB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles Ryan, et al., | |
| Respondents. | |

TO THE HONORABLE JOHN W. SEDWICK, UNITED STATES DISTRICT JUDGE:

Petitioner Ernie Pete Ortega, who is confined in the Arizona State Prison Complex, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents have filed an Answer (Doc. 16), and Petitioner has filed a Reply (Doc. 21).

### BACKGROUND[1]

On February 11, 2005, the Maricopa County Grand Jurors indicted Petitioner and several other prisoners with felony charges arising from their role in a prison riot at the Arizona State Prison – Lewis Complex in Buckeye, Arizona. (Exh. A.) The State alleged the following two counts against Petitioner for attacking Correctional Officer Gregory Schwartz: "Prisoners who commit Assault with Intent to Incite to Riot/Prisoners who Participate in Riot" (a Class 2 felony), and "Aggravated Assault" (a Class 5 felony). (Exh. A.) The State alleged that Petitioner committed the crime with one historical prior felony conviction (reckless manslaughter), and further alleged aggravating circumstances other than

---

[1] Unless otherwise noted, the following facts are derived from the Exhibits submitted with Doc. 16 – Respondents' Answer.

prior felony convictions (infliction of serious physical injury, the presence of an accomplice, and the physical, emotional, or financial harm to the victim). (Exh. B.)

On February 8, 2006, the trial court held a status conference. (Exhs. G-H.) Addressing the court on Petitioner's motion for new counsel, defense counsel explained that miscommunication with his investigator had delayed Petitioner's receipt of the videotape of the incident but that Petitioner now had that evidence:

> Right now Mr. Ortega has seen everything the State's going to review. It's the videotape showing him kicking the Christ out of a guard. I tried to make him understand that, even though the conduct is bad conduct, it's not so egregious that this man should go to prison for nine and a quarter, minimum, consecutive.
>
> He's upset at me because he thinks he doesn't have all of the evidence. The evidence basically is on video and he has seen himself on video kicking the guard. Now he wants something in black and white, on paper, saying he kicked the guard. I think that's foolish.
>
> He doesn't like me and that doesn't stop me from being able to represent him as best I can. I can do this case. I don't believe it's a complicated case at all. Once the jury sees the video and sees him kicking the guard, I said it's over for you. And I'm trying to make him understand that if you get over your anger, let's try to get you something that's decent and right.

(Exh. G at 3-5.)

After further discussion with Petitioner and defense counsel, the trial court denied the motion for new counsel but informed Petitioner that the trial court would consider a subsequent request for new counsel at the next status conference. (Exh. G at 17-19; Exh. H at 1.)

On March 24, 2006, the trial court held another status conference and entertained Petitioner's renewed motion for new counsel. (Exhs. I-K.) At the conference, defense counsel narrated his description of Petitioner's videotaped assault as the videotape of the assault was played ("This is you for part of the riot. And this is you coming up to this guard. And this is you kicking the crap out of the guard, okay. ... And you will see yourself doing that, not only once but three times."). (Exh. J at 5-8.) The trial court, thereafter, granted the motion for new counsel. (Exh. J at 10; Exh. K at 1.)

1    The trial court later granted the newly appointed attorney's motion for a continuance,
2    severed Petitioner's case from the other co-defendants, and recused himself for unexplained
3    reasons. (Exhs. L-S; Exh. T at 9-10; Exh. U.)
4        After the co-defendants' trial concluded, the trial court held a status conference and
5    informed Petitioner that, after a meeting with the prosecutor and defense counsel, "I've
6    discussed with them what additional discovery needs to be done in your case. It's my
7    understanding that Mr. Allen [defense counsel] would like to get a transcript or some
8    transcripts" of the testimony of Officer Pacheco from the co-defendants' trial. (Exh. V at 3;
9    Exhs. W-Y.)
10       On the first day of trial, the trial court confirmed that Petitioner did not want to accept
11   the State's plea offer of pleading guilty to participating in a riot without the historical prior
12   felony allegation (and the dismissal of the aggravated assault charge) for a 5-year
13   presumptive sentence. (Exh. CC at 3-7; Exh. DD at 1.)
14       The facts as found by the Arizona Court of Appeals[2] are as follows:

> At approximately 6:00 p.m. on January 7, 2004, a fight erupted between two
> inmates in the blue side "chow room" at the Buckley Unit of the Lewis Prison
> Complex in Buckeye. Officer D, one of the guards on duty in the dining room,
> deployed a pepper spray to try and break up the fight, but the two continued
> "whaling at each other" and the fight "spilled outside of the chow hall."
>
> Once the pepper spray began dispersing through the room, the other inmates
> inside the dining room began trying to leave. A second group of prisoners,
> who had previously been "called to go outside," were already outside of the
> dining hall. Officer D activated an Incident Management System (IMS), and
> several additional correctional officers responded to the scene.
>
> Officer J, posted in the control tower, heard the IMS issue and observed "a
> flood of people" coming out of the dining hall. By then, "multiple people"
> were fighting. Officer J gave several verbal commands for the inmates to
> "stop fighting" and "get on the ground." Some listened to his commands;
> some ignored them. He then shot .37 millimeter "rubber sting balls" aimed at
> the group of inmates who were fighting, and "everybody went down" and got
> "on their bellies."

---

[2] See Bragg v. Galaza, 242 F.3d 1082, 1087 (9th Cir. 2001) (recognizing that the presumption of correctness that attaches to a state court's factual finding "is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court") (citing Sumner v. Mata, 449 U.S. 539, 546-47 (1981)).

> Captain Y, the senior security officer, arrived at the blue unit yard shortly after the sting balls were fired and ordered the inmates moved into the "rec field" to contain the situation. He also decided that the inmates would be returned to their pods and fed in their cells because the dining room needed to be decontaminated.
>
> The inmates were instructed that they were to come through the gate "only ... ten at a time" in an orderly fashion. Instead, when the gate opened, the inmates started "rushing forward." Two officers tried to secure the gate, but the weight of the rushing inmates was "too much" and they could not shut it. "Mass chaos" ensued as inmates "started running in every direction, attacking officers, getting a hold of whoever they can get a hold of basically."
>
> Officer S was forced back from the gate by the rushing inmates and "right up against the fence." He pepper sprayed approximately six inmates that were coming after him, but one wrapped himself around Officer S's legs and forced him off balance. At that point, six to eight inmates, including Ortega, "came after" Officer S and assailed him.
>
> Officer S landed on his back and "tried to keep a defensive position" as he felt people kicking and punching him. He also got pepper spray in his eyes through contact with his arms and hands as he attempted to protect himself. When Officer S was finally able to work his feet back under his body, he stood back up again. He heard his sergeant call his name and tell him to "get off the yard," and he was able to walk away. Officer S figured that the inmates were "done kinda picking on me."
>
> Officer P videotaped the riot and the attack on Officer S. The tape was later played at Ortega's trial and documents Ortega kicking Officer S. As Ortega was taken off the premises by guards, he stated "I was framed" to the camera. It took approximately an hour to an hour and a half until prison personnel restored order. The incident was also investigated by the criminal investigation unit of the Department of Corrections, which investigates criminal activities that occur on prison property.
>
> The State charged Ortega with one count of prisoner assault with intent to incite riot/participate in riot, a Class 2 felony; and one count of aggravated assault against Officer S, a Class 5 felony. At the conclusion of the trial, the jury found Ortega guilty of both offenses. [(Exh. NN at 3-4; Exh. OO.)] In a separate proceeding, the jury also found the aggravating factor that Ortega committed the offense in the presence of accomplices. [(Exh. NN at 18-38; Exh. OO.)] The trial court found that Ortega had one historical prior felony conviction for manslaughter. [(Exh. QQ at 10-11; Exhs. RR-SS.)]

(Exh. LLL at 2-5 ¶¶ 2-10.)

On January 11, 2007, the trial court granted Petitioner's request to proceed pro per for the sentencing hearing and granted his request for a continuance. (Exh. TT at 19-23; Exhs. UU-VV.)

On January 23, 2011, Petitioner filed a document in the trial court entitled, "Motion to: Constitutional Violation of Access to the Courts" and attached six motions – a motion for

- 4 -

transcripts, a notice of change of judge, a motion to continue for reconsideration, a motion for legal material, a motion for discovery, and a motion for assignment of a mitigation specialist. (Exh. WW.) Finding "[n]o good cause[,]" the trial court summarily denied the "Motion." (Exh. XX.) Petitioner subsequently filed a "Motion to: Submit Disclos[ure] to State" in which he attached various documents. (Exh. YY.)

On February 16, 2007, the trial court granted Petitioner's motion for a continuance of the sentencing hearing on the ground that Petitioner had "not yet received discovery material to proceed[.]" (Exh. ZZ at 4-5.) The next day, Petitioner filed a document in the trial court addressed to the then-Director of the Arizona Department of Corrections, requesting a copy of his inmate records that would allegedly show that he was not liable for the sanction of assault with a weapon. (Exh. AAA.)

On February 19, 2007, Petitioner filed a document in the trial court entitled "Motion to: 2nd request for Disclos[ure] from the State." (Exh. BBB.) The State responded that it had already provided discovery to Petitioner's counsel and it was not obligated to ensure that Petitioner still had previously disclosed materials. (Exh. CCC.) The State also explained that, in response to Petitioner's letter to the Arizona Department of Corrections, the prison's Attorney General Liaison would, nonetheless, be sending the related records to Petitioner. (Exh. CCC.) The trial court summarily denied the motion. (Exh. DDD; Exh. FFF at 3.)

In the presentence report prepared by the Maricopa County Adult Probation Department, the probation officer recommended a greater-than-presumptive sentence based on violent offenses and being viewed as a danger to the community both in and out of prison. (Exh. EEE.)

On March 19, 2007, the trial court held the sentencing hearing and sentenced Petitioner to an aggravated term of 12 years' imprisonment for participating in a prison riot with one historical felony conviction, and to an aggravated but concurrent term of 3 years' imprisonment for aggravated assault. (Exhs. FFF-GGG.) The trial court ordered the two concurrent terms to run consecutively to the prison term that Petitioner was already serving for reckless manslaughter. (Exhs. FFF-GGG.)

Petitioner appealed his convictions and sentences in the Arizona Court of Appeals, raising four issues under Arizona law. (Exh. JJJ.) After the State responded, the Arizona Court of Appeals affirmed the convictions and sentences. (Exhs. KKK-LLL.) The Arizona Supreme Court summarily denied Petitioner's petition for review. (Exhs. MMM-NNN.)

On June 19, 2009, Petitioner filed a notice of post-conviction relief under Arizona Rule of Criminal Procedure 32. (Exh. OOO.) The trial court appointed counsel but, after completing his review, counsel stated that he was "unable to find any claims for relief to raise" in the post-conviction proceeding. (Exhs. PPP-RRR.) The trial court, thereafter, extended the time for Petitioner to file a pro per petition for post-conviction relief. (Exh. SSS.)

On January 22, 2010, Petitioner filed a pro per petition for post-conviction relief (both a completed form and an attached brief). (Exh. TTT.) At the same time, he also filed a motion challenging the effectiveness of his direct-appeal attorney, a sworn declaration, a motion to provide counsel, and a motion for full disclosure of evidence. (Exh. UUU.)

On March 22, 2010, the State filed its response to the petition for post-conviction relief. (Exh. VVV.) The State argued that some of the claims were precluded for failure to raise them on direct review, and argued that the jurisdictional issue ("advocacy for the prosecution" by allowing the State to reopen its case to prove that the crimes occurred in Maricopa County, Arizona) was precluded for having been already raised on direct review. (Exh. VVV at 3-6.) On the merits, the State argued that the claim contending that the investigating officer was fired from his detective position (before his employment at ADOC for evidence tampering) would not have affected the verdict at trial. (Exh. VVV at 5-6.) In reply, Petitioner asserted that he had not yet received the State's response and hence any response would be untimely and should be rejected. (Exh. WWW.)

On April 28, 2010, the trial court ruled that "[t]he claims raised by the defendant are either precluded and deemed waived because they were not raised on direct appeal or they have no merit[,]" and dismissed the post-conviction petition. (Exh. XXX.) On June 3, 2010, the trial court denied Petitioner's motion for reconsideration. (Exhs. YYY-ZZZ.)

Petitioner then filed another document in the trial court, this time seeking review of his post-conviction proceeding by a different trial judge. (Exh. AAAA.) On June 23, 2010, the trial court summarily denied this motion. (Exh. BBBB.)

On July 13, 2010, Petitioner filed a "Petition for Review of Denials, and Evidentiary Hearing" not in the Arizona Court of Appeals but, instead, in the Arizona Supreme Court. (Exh. CCCC.)

In response to Petitioner's "Petition for Review," the Arizona Supreme Court sent a checklist to Petitioner indicating that the court was rejecting the petition for review because (1) the petition lacked a copy of any court of appeals decision under review; (2) the petition for review lacked a certificate of compliance; and (3) the petition for review needed to be initially filed in the court of appeals. (Exh. MMMM at 57.)

On July 31, 2010, Petitioner filed documents in the trial court and appellate court "request[ing] the court of appeals to issue a certificate of compliance" "for review of the defendant's P.C.R. denial." (Exh. DDDD; Exh. JJJJ at 8.)

On September 9, 2010, the Arizona Supreme Court sent Petitioner a letter reminding him that the supreme court instructed him to file a compliant petition for review in the Arizona Court of Appeals. (Exh. MMMM at 64; Exh. GGGG.) The supreme court also informed Petitioner that the court of appeals had advised the supreme court that it had not received any petition-for-review documents, and that Petitioner may wish to contact the court of appeals at the address provided. (Exh. MMMM at 64-65; Exh. GGGG.)

On September 11, 2010, Petitioner filed a "notice" in the trial court in which he stated that he received a letter from the Arizona Supreme Court that informed him that documents were missing (non-filed) in the Arizona Court of Appeals, and he asked the trial court to check if the documents were forwarded to the court of appeals and, if not, to forward them.

1  (Exh. EEEE.) He appears to have sent similar requests to the court of appeals and to the
2  Maricopa County Attorney's Office. (Exh. MMMM at 66-68.)[3]

3  On September 20, 2010, the Arizona Court of Appeals wrote to Petitioner and stated
4  that on September 16, 2010, it had received his pleading entitled "Notice and Request for
5  continuance for 30 days to file," but stated that there were no active cases pending in the
6  Arizona Court of Appeals. (Exh. FFFF.) The letter also instructed that a petition for review
7  should be filed in the Arizona Court of Appeals, and a motion for an extension of time to file
8  a petition for review should be filed in the trial court. (Exh. FFFF.)

9  On September 27, 2010, Petitioner filed a document in the trial court entitled,
10 "Request for Enlargement to File for Review by the Court of Appeals and Delayed Filing."
11 (Exh. GGGG.)[4]

12 On October 11, 2010, Petitioner filed a premature "Request for Review" in the
13 Arizona Court of Appeals, stating that the trial court had not yet ruled on his request for
14 enlargement of the time to file a petition for review, and asking the court of appeals to accept
15 jurisdiction of his petition for review. (Exh. MMMM at 75-76.) On October 22, 2010, the
16 trial court summarily denied Petitioner's "Request for Enlargement." (Exh. HHHH.)

---

[3] In these documents, Petitioner stated that the "missing documents" involved the certificate of compliance that he sent to the Arizona Court of Appeals on July 31, 2010. It appears that Petitioner believed that the Arizona Supreme Court's letter (dated September 9, 2010, and documenting that the Arizona Court of Appeals had no record of any petition-for-review documents) was erroneous, evidently on the ground that Petitioner had filed his request for a certificate of compliance in the Arizona Court of Appeals on July 31, 2010. According to the record, despite clear instruction from the supreme court, Petitioner apparently failed to understand that what was "missing" in the Arizona Court of Appeals was a compliant petition for review – not a certificate of compliance.

[4] Two days later, on September 29, 2010, Petitioner filed a federal habeas petition in this Court, raising the advocating-for-the-prosecution claim that would later become his first habeas claim in the pending habeas petition. See Ortega v. Ryan, CV 10-2185-PHX-MHM (MHB) (Doc. 1). After the Court accepted the filing of his first amended habeas petition, the Court dismissed the habeas proceeding without prejudice in light of the then-pending post-conviction relief proceeding in the Arizona state courts. On January 31, 2011, the Court denied Petitioner's motion for reconsideration of that dismissal.

- 8 -

On November 6, 2010, Petitioner sent the same "Request for Review" to the Arizona Court of Appeals that he previously sent to that court on October 11, 2010 (the only difference was that Petitioner crossed-out the prior date and replaced it with November 6, 2010). (Exh. JJJJ.) He also included a "Sworn Declaration 'Statement'" in which he stated that he should not be held liable for any delays or for the actions of the trial court. (Exh. JJJJ.)

On November 16, 2010, the Arizona Court of Appeals, citing Ariz.R.Crim.P. 32.9(c), issued an order[5] dismissing the petition for review as untimely stating, in pertinent part,

> A petitioner who seeks appellate court review of the actions of the trial court must file a petition within 30 days after the final decision of the trial court. Whether petitioner was without fault for the untimely filing is a question of fact. The trial court may, "after being presented with proper evidence, allow a late filing" if it finds that petitioner was not responsible for the untimely filing. *See State v. Pope*, 130 Ariz. 253, 255, 635 P.2d 846, 848 (1981). Because the petition in this matter was untimely, IT IS ORDERED dismissing this matter.

(Exh. KKKK at 1-2.)

On November 24, 2010, Petitioner filed the equivalent of a motion for reconsideration in the court of appeals. (Exh. LLLL.) The document was entitled, "Motion to: Contest Order filed Nov. 16, 2010 and Request for Review of PCR Denials[,]" and the appellate court file-stamped it on December 10, 2010. (Exh. LLLL.)

On November 24, 2010, the Arizona Court of Appeals issued an order on Petitioner's "motion for reconsideration." (Exh. OOOO.)[6] The court stated, "[a]s indicated to the petitioner in this court's order, if the petitioner believes that the untimely filing was without his fault, petitioner should file a motion for permission to file a delayed petition review in the trial court. *State v. Pope*, 130 Ariz. 253, 255, 635 P.2d 846, 848 (1981)." (Exh. OOOO.)

---

[5] Based on the language in the court of appeals' order, it appears that the court was responding to Petitioner's petition for review filed on November 6, 2010, not the earlier version of the petition for review that Petitioner filed on October 11, 2010.

[6] The document to which the court of appeals was responding is not clear.

- 9 -

The court denied Petitioner's motion "without prejudice to filing an appropriate motion in the trial court." (Exh. OOOO.)

On December 6, 2010, the Arizona Court of Appeals sent another letter to Petitioner, evidently in response to his Petition for Review and "Motion to: Exhibits" that appears to be what he originally filed on October 11, 2010. (Exh. NNNN.) The court of appeals noted that his petition for review lacked a copy of the court of appeals decision, a certificate of service, and a certificate of compliance. (Exh. NNNN.)

On December 15, 2010, the court of appeals issued another order. (Exh. PPPP.) The court treated Petitioner's "Request for Review of PCR Denials" as a motion for reconsideration of the appellate court's order of dismissal. (Exh. PPPP at 1.) The appellate court recounted that, after Petitioner filed an untimely petition for review in the appellate court, the appellate court dismissed the matter. (Exh. PPPP at 1.) The court denied Petitioner's motion for reconsideration by concluding as follows: "As indicated to petitioner in that order, if the petitioner believes that the untimely filing was without fault on his part, petitioner should consider filing a motion for permission to file a delayed petition for review in the superior court. *See State v. Pope*, 130 Ariz. 253, 255, 635 P.2d 846, 848 (1981)." (Exh. PPPP at 1-2.)

Instead of following the instructions set forth in the appellate court's order, Petitioner filed the operative habeas petition currently pending in this Court. (Doc. 1.) Petitioner raises four grounds for relief. In Ground One, he alleges a violation of his Fifth and Fourteenth Amendment rights to equal protection and due process, and Arizona Rules of Criminal Procedure, because the trial judge and prosecutor allegedly conspired to convict Petitioner "without jurisdiction." Petitioner also requests the establishment of a new law of "advocating to the prosecution." In Ground Two, Petitioner asserts that his Fifth and Sixth Amendment equal protection and due process rights were violated "by the introduction at trial of an identification obtained in violation of Constitutional rights." In Ground Three, Petitioner claims he was denied his right to defend accusations against him, was denied his Fifth and Sixth Amendment due process rights, and was subjected to prosecutorial

misconduct "by 1.) withholding evidence; 2.) destruction of key points of evidence; 3.) p[e]rjury during trial by hate witnesses[]; [and] 4.) unconstitutional suppression of evidence." In Ground Four, Petitioner asserts violations of his Fifth and Sixth Amendment rights, prosecutorial misconduct, and due process violations based on "newly discovered evidence suppressed by the State and brought up during trial after knowing of the fact for over one year and still suppressing the evidence."

**DISCUSSION**

In their Answer, Respondents contend that the claims presented in Petitioner's habeas petition are procedurally defaulted. Respondents argue that because Petitioner cannot establish the requisite cause and prejudice or a fundamental miscarriage of justice, he is not entitled to federal habeas review of these procedurally defaulted claims.

**A.     Exhaustion and Procedural Default**

A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court. See 28 U.S.C. § 2254(b)(1) and (c); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. See O'Sullivan v. Boerckel, 526 U.S. 838, 839-46 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

Proper exhaustion requires a petitioner to have "fairly presented" to the state courts the exact federal claim he raises on habeas by describing the operative facts and federal legal theory upon which the claim is based. See, e.g., Picard v. Connor, 404 U.S. 270, 275-78 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). A claim is only "fairly presented" to the state courts when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim under the United States Constitution." Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000)

(quotations omitted); see Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

A "general appeal to a constitutional guarantee," such as due process, is insufficient to achieve fair presentation. Shumway, 223 F.3d at 987 (quoting Gray v. Netherland, 518 U.S. 152, 163 (1996)); see Castillo v. McFadden, 399 F.3d 993, 1003 (9th Cir. 2005) ("Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory."). Similarly, a federal claim is not exhausted merely because its factual basis was presented to the state courts on state law grounds – a "mere similarity between a claim of state and federal error is insufficient to establish exhaustion." Shumway, 223 F.3d at 988 (quotations omitted); see Picard, 404 U.S. at 275-77.

Even when a claim's federal basis is "self-evident," or the claim would have been decided on the same considerations under state or federal law, a petitioner must still present the federal claim to the state courts explicitly, "either by citing federal law or the decisions of federal courts." Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000) (quotations omitted), amended by 247 F.3d 904 (9th Cir. 2001); see Baldwin v. Reese, 541 U.S. 27, 32 (2004) (claim not fairly presented when state court "must read beyond a petition or a brief ... that does not alert it to the presence of a federal claim" to discover implicit federal claim).

Additionally, under the independent state grounds principle, a federal habeas court generally may not review a claim if the state court's denial of relief rests upon an independent and adequate state ground. See Coleman v. Thompson, 501 U.S. 722, 731-32. The United States Supreme Court has explained:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

Id. at 730-31. A petitioner who fails to follow a state's procedural requirements for presenting a valid claim deprives the state court of an opportunity to address the claim in

much the same manner as a petitioner who fails to exhaust his state remedies. Thus, in order to prevent a petitioner from subverting the exhaustion requirement by failing to follow state procedures, a claim not presented to the state courts in a procedurally correct manner is deemed procedurally defaulted, and is generally barred from habeas relief. See id. at 731-32.

Claims may be procedurally barred from federal habeas review based upon a variety of factual circumstances. If a state court expressly applied a procedural bar when a petitioner attempted to raise the claim in state court, and that state procedural bar is both "independent"[7] and "adequate"[8] – review of the merits of the claim by a federal habeas court is barred. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court.") (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977) and Murray v. Carrier, 477 U.S. 478, 485-492 (1986)).

Moreover, if a state court applies a procedural bar, but goes on to alternatively address the merits of the federal claim, the claim is still barred from federal review. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. ... In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.") (citations omitted); Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003) ("A state court's application of a procedural rule is not undermined where, as here, the state court simultaneously rejects the merits of the claim.") (citing Harris, 489 U.S. at 264 n.10).

---

[7] A state procedural default rule is "independent" if it does not depend upon a federal constitutional ruling on the merits. See Stewart v. Smith, 536 U.S. 856, 860 (2002).

[8] A state procedural default rule is "adequate" if it is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255, 262-53 (1982)).

Furthermore, a subsequent "silent" denial of review by a higher court simply affirms a lower court's application of a procedural bar. See Ylst, 501 U.S. at 803 ("where ... the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits").

A procedural bar may also be applied to unexhausted claims where state procedural rules make a return to state court futile. See Coleman, 501 U.S. at 735 n.1 (claims are barred from habeas review when not first raised before state courts and those courts "would now find the claims procedurally barred"); Franklin v. Johnson, 290 F.3d 1223, 1230-31 (9th Cir. 2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies only when a state court has been presented with the federal claim,' but declined to reach the issue for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally barred.'") (quoting Harris, 489 U.S. at 263 n.9).

In Arizona, claims not previously presented to the state courts via either direct appeal or collateral review are generally barred from federal review because an attempt to return to state court to present them is futile unless the claims fit in a narrow category. See Ariz.R.Crim.P. 32.1(d)-(h), 32.2(a) (precluding claims not raised on appeal or in prior petitions for post-conviction relief), 32.4 (time bar), 32.9 (petition for review must be filed within thirty days of trial court's decision). Because Arizona's procedural rules are consistently and regularly followed and are independent of federal law, either their specific application to a claim by an Arizona court, or their operation to preclude a return to state court to exhaust a claim, will procedurally bar subsequent review of the merits of that claim by a federal habeas court. See Stewart, 536 U.S. at 860 (determinations made under Arizona's procedural default rule are "independent" of federal law); Smith v. Stewart, 241 F.3d 1191, 1195 n.2 (9th Cir. 2001) ("We have held that Arizona's procedural default rule is regularly followed ["adequate"] in several cases.") (citations omitted), reversed on other grounds, Stewart v. Smith, 536 U.S. 856 (2002); see also Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir. 1998) (rejecting argument that Arizona courts have not "strictly or regularly

followed" Rule 32 of Arizona Rules of Criminal Procedure); State v. Mata, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and preclusion rules strictly applied in post-conviction proceedings).

The federal court will not consider the merits of a procedurally defaulted claim unless a petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. See Schlup v. Delo, 513 U.S. 298, 321 (1995); Coleman, 501 U.S. at 750-51; Murray, 477 U.S. at 495-96. Pursuant to the "cause and prejudice" test, a petitioner must point to some external cause that prevented him from following the procedural rules of the state court and fairly presenting his claim. "A showing of cause must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [the prisoner's] efforts to comply with the State's procedural rule. Thus, cause is an external impediment such as government interference or reasonable unavailability of a claim's factual basis." Robinson v. Ignacio, 360 F.3d 1044, 1052 (9th Cir. 2004) (citations and internal quotations omitted). Ignorance of the State's procedural rules or other forms of general inadvertence or lack of legal training and a petitioner's mental condition do not constitute legally cognizable "cause" for a petitioner's failure to fairly present his claim. Regarding the "miscarriage of justice," the Supreme Court has made clear that a fundamental miscarriage of justice exists when a Constitutional violation has resulted in the conviction of one who is actually innocent. See Murray, 477 U.S. at 495-96.

**B.     Grounds One through Four**

Having reviewed the record, the Court finds that Petitioner's claims are procedurally defaulted. Petitioner failed to fairly present his habeas claims to the Arizona Court of Appeals as federal issues during both direct review and post-conviction relief proceedings, and any attempt to return to state court would be futile. Petitioner has not established that any exception to procedural default applies.

**1.     Direct Review**

In Ground One of his habeas petition, Petitioner argues that the trial court engaged in a conspiracy and violated his federal constitutional rights when, after the State rested, the

trial court allowed the State to re-open the case to prove the jurisdictional point that the location of the prison where the riot and assault occurred was in Maricopa County, Arizona. (Doc. 1 at 6-6a.) Although Petitioner alleges a violation of his constitutional rights on habeas, his arguments to the Arizona Court of Appeals on direct review turned exclusively on Arizona law. (Exh. JJJ at 30.) That is – he labeled no aspect of the claim "federal," cited no provision of the United States Constitution, and cited no federal cases. See Baldwin, 541 U.S. at 32 ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state- court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"). Thus, Petitioner failed to fairly present the claim alleged in Ground One on direct review. See id.; Shumway, 223 F.3d at 987 (holding that the federal habeas petitioner's "naked reference to 'due process'" was "insufficient to state a federal claim" in that "[i]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court" and hence does not constitute fair presentation), reaffirmed in Casey v. Moore, 386 F.3d 896, 913 (9th Cir. 2004) ("Even where a petitioner argues that an error deprived him of a 'fair trial' or the 'right to present a defense,' unless the petitioner clearly alerts the court that he is alleging a specific federal constitutional violation, the petitioner has not fairly presented the claim.").

In Ground Two, Petitioner contends that his Fifth and Sixth Amendment equal protection and due process rights were violated "by the introduction at trial of an identification obtained in violation of Constitutional rights." (Doc. 1 at 7-7a.) On direct review, however, Petitioner merely addressed various witness testimony and alleged that the trial court erred by denying defense counsel's motion for an acquittal pursuant to Ariz.R.Crim.P. 20. (Exh. JJJ at 33-40.) Petitioner never raised an issue of federal law to the court of appeals. (Exh. JJJ at 33-40.)

In Ground Three, Petitioner claims he was denied his right to defend accusations against him, was denied his Fifth and Sixth Amendment due process rights, and was

subjected to prosecutorial misconduct "by 1.) withholding evidence; 2.) destruction of key points of evidence; 3.) p[e]rjury during trial by hate witnesses[]; [and] 4.) unconstitutional suppression of evidence." (Doc. 1 at 8-8a.) Petitioner states that no video or audio tapes were provided for his review before sentencing, his attorney's review on direct review, or for Petitioner's review in post-conviction proceedings. (Doc. 1 at 8-8a.) Petitioner also suggests that the trial court unconstitutionally imposed an aggravated sentence. (Doc. 1 at 8-8a.) None of these issues, however, were raised on direct review. (Exh. JJJ.)

In his final habeas claim, Petitioner asserts violations of his Fifth and Sixth Amendment rights, prosecutorial misconduct, and due process violations based on "newly discovered evidence suppressed by the State and brought up during trial after knowing of the fact for over one year and still suppressing the evidence." (Doc. 1 at 9.) Petitioner refers to a report of the Arizona Department of Corrections in which the Department of Corrections demoted Captain Yielding and the service record of Officer Fleming, and claims that these documents could have been used by the jury to undermine witness credibility. (Doc. 1 at 9.) Once again, none of these issues were raised on direct review. (Exh. JJJ.)

In sum, Petitioner failed to raise any of the claims alleged in his habeas petition on direct review.

### 2. Post-Conviction Relief Proceedings

Despite the litany of filings by Petitioner and correspondence/orders from the state courts containing detailed instructions regarding the proper filing requirements for Petitioner's petition for review, Petitioner failed to comply with the State's procedural rules. The Arizona Court of Appeals ultimately found, citing Ariz.R.Crim.P. 32.9(c), that "the petition for review was not filed within 30 days of the trial court's final decision disposing of the petition for post-conviction relief proceedings," and dismissed the petition as untimely. As such, this Court finds that Petitioner did not properly exhaust any of the claims alleged in his habeas petition in the state courts by presenting them to the Arizona Court of Appeals in a procedurally correct manner. And, Petitioner is procedurally barred from returning to the state courts to exhaust his federal habeas claims by the Arizona Rules of Criminal

Procedure governing preclusion and timeliness. Accordingly, Petitioner's claims are procedurally defaulted, and Petitioner has not demonstrated any external factor that prevented him from fairly presenting his claims. Additionally, Petitioner has failed to show a fundamental miscarriage of justice to excuse the default of his habeas claims.

## CONCLUSION

Grounds One through Four set forth in Petitioner's habeas petition are procedurally defaulted, and Petitioner has not established cause for his failure to raise his claims in state court, actual prejudice, or demonstrated that a miscarriage of justice would result if these issues are not addressed. Thus, the Court will recommend that Petitioner's Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right

to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  See Rule 72, Federal Rules of Civil Procedure.

DATED this 24th day of January, 2012.

_____
Michelle H. Burns
United States Magistrate Judge